UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 2:22-cv-14129-KMM

UNITED STATES SECURITIES
& EXCHANGE COMMISSION,

    Plaintiffs,

v.

MCC INTERNATIONAL CORP.
d/b/a Mining Capital Coin Corp., *et al*,

    Defendants.
_____/

## ORDER ON REPORT & RECOMMENDATION

THIS CAUSE came before the Court upon Plaintiff United States Securities and Exchange Commission's ("SEC" or "Plaintiff") Motion for Default Judgment Against All Defendants. ("Mot." or "Motion") (ECF No. 188). Therein, the SEC moves for moves for default judgment against Defendants MCC International Corp. ("MCC"), CPTLCoin Corp. ("CPTLCoin"), Bitchain Exchanges ("Bitchain") (which will be referred to collectively as the "Entity Defendants"), as well as Luiz Carlos Capuci, Jr., and Emerson Sousa Pires. This matter was referred to Magistrate Judge Ryon M. McCabe, pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida, to take all necessary and proper action as required by law and/or to issue a Report and Recommendation on Plaintiff's Motion for Default Judgment. *See* (ECF Nos. 190). Magistrate Judge McCabe issued a Report and Recommendation ("R&R") (ECF No. 191), recommending that Plaintiff's Motion for Default Judgment be GRANTED. Neither party has filed objections to the R&R and the time do so has passed. As set forth below, the Court ADOPTS the R&R.

I.  **BACKGROUND**

Though Magistrate Judge McCabe thoroughly parsed through the Motions and extracted the allegations therein, the Court nevertheless provides a brief summary.  On April 7, 2022, the SEC filed a Complaint alleging that MCC and its founders, Defendant Capuci and Defendant Pires, violated the federal securities laws in a scheme to defraud cryptocurrency investors.  *See generally* ("Compl." or "Complaint") (ECF No. 1).  The Complaint alleges that Capuci and Pires convinced potential investors that MCC made money through cryptocurrency mining and by trading stocks, foreign exchange, and cryptocurrency on digital platforms.  *Id.* ¶¶ 18–25.  MCC allegedly generated steady returns through "arbitrage trading" in cryptocurrency, "semi-automatic robotic trading" in the foreign exchange market, and cryptocurrency mining operations in Florida, Vermont, and Iceland.  *Id.* ¶¶ 18–19.  Investors could tap into MCC's success by purchasing "mining packages," which provided investors guaranteed weekly payouts that escalated in value based on the package price.  *Id.* ¶ 26.  MCC and Capuci maintained an investor list showing 65,535 investor accounts.  *Id.* ¶ 55.

On April 28, 2023, the Clerk entered default against Pires and the Entity Defendants for failure to answer the complaint. (ECF 130).  In August 2024, Capuci's attorneys of record moved to withdraw their appearances in this matter, which the Court granted.  (ECF Nos. 178, 180–83). On October 31, 2024, the Clerk entered default against Capuci.  (ECF No. 186).  The Court then directed the SEC to move for default judgment.  (ECF No. 187).  On December 10, 2024, the SEC filed the instant Motion seeking entry of a final default judgment against Defendants.  *See* Mot. Defendants have not responded to the Motion and the time to do so has passed.  Now before this Court is Magistrate Judge McCabe's R&R, which recommends that this Court grant the SEC's Motion for default judgment and enter default in accordance with the SEC's proposed final judgment.  R&R at 20.

## II. LEGAL STANDARD

### A. Standard of Review

The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The Court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). A *de novo* review is therefore required if a party files "a proper, specific objection" to a factual finding contained in the report. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). "It is critical that the objection be sufficiently specific and not a general objection to the report" to warrant *de novo* review. *Id.*

Yet when a party has failed to object or has not properly objected to the magistrate judge's findings, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Keaton v. United States*, No. 14-21230-CIV, 2015 WL 12780912, at *1 (S.D. Fla. May 4, 2015); *see also Lopez v. Berryhill*, No. 17-CV-24263, 2019 WL 2254704, at *2 (S.D. Fla. Feb. 26, 2019) (stating that a district judge "evaluate[s] portions of the R & R not objected to under a clearly erroneous standard of review" (citing *Davis v. Apfel*, 93 F. Supp. 2d 1313, 1317 (M.D. Fla. 2000))).

### B. Default Judgment

A complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, which is met when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245–46 (11th Cir. 2015). Prior to dismissing an action *sua sponte*, a court must provide the plaintiff with notice of its intent to dismiss and an opportunity to respond. *Id*. at 1247–48.

3

"The mere entry of a default by the Clerk of the Court does not in itself warrant the entry of a default judgment by the Court." *Garrido v. Linden Contracting Servs.*, Case No. 0:14-cv-60469-KMM, 2014 WL 12603170, at *1 (S.D. Fla. Aug. 21, 2014). "Rather, the Court must find that there is a sufficient basis in the pleadings for the judgment to be entered." *Id.* (citation omitted). "A party in default has admitted all well-pleaded allegations of fact." *Id.*

### III. DISCUSSION

In this case, where the Parties have not objected to the R&R, this Court need only review the R&R for clear error. *See Keaton*, 2015 WL 12780912, at *1.

Count I of the Complaint alleges that MCC, Capuci, and Pires violated Sections 5(a) and 5(c) of the Securities Act of 1933 ("Securities Act"), codified at 15 U.S.C. §§ 77e(a) and 77e(c), by engaging in an unregistered securities offering. As to Count I, the R&R found that the Complaint sufficiently alleged a violation of § 5 of the Securities Act. R&R at 9. Specifically, the R&R noted that:

> MCC, which Capuci and Pires formed and controlled, offered, and sold at least $8.1 million in MCC securities to investors. (DE 1 ¶ 55). Capuci and Pires both participated in the offering by pitching MCC securities to investors. (DE 1 ¶¶ 18-26). Capuci, Pires, and MCC "made use of the means and instrumentalities of interstate commerce." (DE 1 ¶ 12). And MCC's securities and securities offerings were not registered with the SEC. (DE 1 ¶ 13). Accordingly, Capuci, Pires, and MCC violated Section 5 of the Securities Act.

*Id.* at 9–10. The Court finds no clear error with the R&R's findings on Count I. *See id.*; *see also See Keaton*, 2015 WL 12780912, at *1.

"Count II of the Complaint alleges that all Defendants violated Securities Act Sections 17(a)(1), (a)(2), and (a)(3) [15 U.S.C. §§ 77q(a)(1), (a)(2), (a)(3)], by fraudulently offering and selling MCC securities." R&R at 10 (internal quotations omitted). "Count III of the complaint alleges that all Defendants violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rules 10b-5(a), (b), and (c) thereunder [17 C.F.R. §

4

240.10b-5(a), (b), (c)], by engaging in fraud in connection with the purchase and sale of MCC securities." *Id.* at 10. As to Counts II and III, the R&R found that the Complaint sufficiently alleged a violation of Securities Act Sections 17(a) and the Exchange Act. *Id.* at 10–11. The R&R further noted that:

> For offers and sales of securities, establishing violations of Securities Act Section 17(a) 'requires substantially similar proof' as required for Exchange Act Section 10(b) liability. *Monterosso*, 756 F.3d at 1334; *see also Sec. & Exch. Comm'n v. Merchant Cap., LLC*, 483 F.3d 747, 766 (11th Cir. 2007). That said, violations of Sections 17(a)(2) and (a)(3) may be based on negligence rather than scienter. *Id.*

*Id.* at 11. Specifically, the R&R noted that:

> Capuci and Pires violated these antifraud provisions by making false statements to investors and engaging in a fraudulent scheme. They made false statements about the trading MCC would perform and profits investors should expect. Capuci and Pires acted with scienter because they made their false statements "knowingly or recklessly." (DE 1 ¶ 65). Their scienter is also shown by their misappropriation of investor funds and the fact they fled to Brazil after learning of the SEC investigation. Accordingly, Capuci and Pires violated Securities Act Section 17(a) and Exchange Act Section 10(b) and Rule 10b-5. MCC's presentations were similarly littered with material misrepresentations and omissions to investors. As for Bitchain and CPTLCoin, they were instrumental in deceiving investors to believe that the CPTL "coin" was being actively traded, and increasing precipitously in value.

*Id.* The Court finds no clear error with the R&R's findings on Counts II and III. *See id.*; *see also See Keaton*, 2015 WL 12780912, at *1.

"Count IV of the complaint alleges that Capuci and Pires violated Securities Act Section 20(a) [15 U.S.C. § 78t(a)], as control persons of MCC." R&R at 10. As to Count IV, the R&R found that the Complaint sufficiently alleged liability against Capuci and Pires as control persons of MCC. *Id.* at 11. The R&R noted that Capuci and Pries "controlled every aspect of MCC" and further noted that:

> They co-founded MCC, after which Capuci served as its president, director, and registered agent, while Pires was its vice-president, secretary, treasurer, and director. (DE 1 ¶¶ 16-17). Because they had the power to control MCC's general affairs; to control the specific policies and actions that resulted in MCC's violations of Section 10(b) and Rule 10b5; and were at least reckless in failing to stop MCC's

5

> violations, they are liable for such violations alongside MCC. *See Laperriere v. Vesta Ins. Group, Inc.*, 526 F.3d 715, 723 (11th Cir. 2008) (noting that liability under Section 20(a) is established when "(1) the defendant had the power to control the general affairs of the primary violator, and (2) the defendant had the power to control the specific corporate policy that resulted in the primary violation"); *Brown v. Enstar Group, Inc.*, 84 F.3d 393, 396 (11th Cir. 1996) (noting that a controlling person is liable if he "acted recklessly in failing to do what he could have done to prevent the violation").

R&R at 11–12. This Court finds no clear error with the R&R's findings on Count IV. *See id.*; *see also See Keaton*, 2015 WL 12780912, at *1.

The R&R then considered whether to grant the relief sought by the SEC, which includes (1) a permanent injunction, (2) disgorgement of $28,499,488.76 plus prejudgment interest of $7,782,239.21, (3) joint and several liability, (4) civil penalties of $6 million for Capuci and $4 million for Pires, and (5) an officer and director bar for Capuci and Pires. *See* R&R at 12. As an initial matter, the R&R concluded that "the SEC's evidence [is] sufficient to support damages" and that "an evidentiary hearing unnecessary." *Id.* (citing *Sec. & Exch. Comm'n v. Caputo*, No. 22- CV-61693-JEM, 2023 WL 3740926, at *3-6 (S.D. Fla. May 17, 2023)). As to the requested relief, the R&R found that: (1) "a permanent injunction is necessary to prevent Defendants from engaging in future violations of the securities laws due to the apparent lack of remorse shown by Defendants and the ease with which they may revive a similar scheme via the internet[;]" (2) "the SEC presented sufficient evidence to support a $28,499,488.76 disgorgement award[;]" (3) joint and several liability is appropriate because the Defendants acted in concert; and (4) civil penalties as to Defendants Capuci and Pires are appropriate. *See generally* R&R.

"The SEC requests disgorgement from all Defendants, jointly and severally, in the amount of $28,499,488.76, plus $7,782,239.21 in prejudgment interest." *Id.* at 14. In calculating disgorgement, Magistrate Judge McCabe "reviewed the declaration of SEC accountant Larry Brannon" and found "support for $28,499,488.76 in disgorgement." *Id.* at 15. Specifically, the R&R noted that "the SEC estimates that Defendants collectively received fraudulent proceeds of

6

$14,513,182.84 in bank deposits, $12,868,508.91 in crypto asset payments, and $1,117,797.01 in PayPal payments[,]" the sum of which is $28,499,488.76. *Id.* (citing (ECF No. 188-1) ¶¶ 7–9).

The R&R further held that "an award of prejudgment interest calculated pursuant to the IRS underpayment rate should be awarded." R&R at 16; *see also id.* at 15 (quoting *Sec. & Exch. Comm'n v. Merch. Capital, LLC*, 486 F. App'x 93, 97 (11th Cir. 2012) ("An award of prejudgment interest may be appropriate because, without it, a defendant 'would have benefitted from what in effect amounted to interest-free loans of the illgotten funds.'"). "Using this statutory rate, the SEC accountant calculated prejudgment interest at $7,782,239.21, accruing quarterly from January 1, 2020 (the midpoint of the relevant time period) to September 30, 2024 (the end of the most recent quarter)." R&R at 16 (citing (ECF No. 118-1) ¶ 12).

Moreover, in determining civil penalties are appropriate, the R&R noted that:

> Capuci and Pires stole over $28 million via a complex, multi-layered scheme of falsely promoting crypto asset mining and trading to global investors. As the scheme collapsed, they refused to repay investors, misled investors with false assurances including releasing misleading videos urging investors to remain patient, and blamed Bitchain for delays without disclosing that they controlled Bitchain. Their fraud was not a onetime event but a persistent pattern of deception. Then, rather than acknowledging their misconduct, Capuci and Pires left the United States for Brazil. Their scheme inflicted significant financial harm, likely exceeding the $28 million in disgorgement sought.

R&R at 19. The R&R ultimately concluded that "a $6 million civil penalty on Capuci and a $4 million penalty on Pires" is appropriate "to punish and deter their misconduct in light of their $28 million in ill-gotten gains." *Id.* The R&R further found that an officer and director bar is appropriate "because Capuci and Pires are manifestly unfit to serve as the officers or directors of any publicly held company." *Id.* at 20. This Court agrees.

Finally, the R&R recommended that this Court enter the SEC's proposed final judgment. R&R at 20 (citing (ECF No. 188-3)). Finding no clear error in the R&R's findings, this Court ADOPTS Magistrate Judge McCabe's R&R.

7

**IV.    CONCLUSION**

Accordingly, UPON CONSIDERATION of the R&R, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the R&R (ECF No. 191) is ADOPTED.  The SEC's Motion for Default Judgment (ECF No. 188) is GRANTED.  It is FURTHER ORDERED that the SEC's Proposed Final Judgment (ECF No. 188-3) is hereby APPROVED AND ENTERED. The case is DISMISSED WITH PREJUDICE.  The Clerk of Court is INSTRUCTED to CLOSE this case. The Court retains jurisdiction to enforce the Final Judgment.

DONE AND ORDERED in Chambers at Miami, Florida, this  26th  day of August 2025.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record